232 So.2d 252 (1970)
James E. CAMPBELL, and Beatrice D. Campbell, His Wife, Appellants,
v.
Thomas WERNER, As Trustee, and Thomas Werner and Wilma Werner, His Wife, Appellees.
No. 69-896.
District Court of Appeal of Florida, Third District.
February 24, 1970.
Rehearing Denied March 18, 1970.
*253 Jordan & Chambers, Homestead, for appellants.
Gong & Pohlig, Miami, for appellees.
Before PEARSON, C.J., and CHARLES CARROLL and HENDRY, JJ.
CHARLES CARROLL, Judge.
This appeal challenges the correctness of an interlocutory order in a suit for foreclosure of a purchase money mortgage on real estate, entered prior to service of process on the mortgagor-owner, holding that the plaintiff mortgagees could not foreclose for the accelerated balance owed, and permitting the mortgagor to return the mortgage to good standing by curing the default. We find error, and reverse.
The complaint for foreclosure which was filed by the appellants on July 24, 1969, named as defendants Thomas Werner, as *254 trustee and individually, and Wilma Werner, his wife. It was alleged that the plaintiffs were owners and holders of a promissory note and a purchase money mortgage given to secure the same, made and delivered to them by the defendant Thomas Werner, as trustee, on June 28, 1968. Copies of the note and mortgage were attached to the complaint. The note was for $77,981.45, with interest at 6% per annum payable annually. It provided for the payment of the principal in five equal annual installments beginning June 29, 1969, authorized prepayment without penalty, and contained an acceleration clause. The mortgage embodied a copy of the note and provided a 15-day grace period for the payments called for therein and contained an acceleration clause, as follows:
"If any of said sums of money herein referred to be not promptly and fully paid within 15 days next after the same severally become due and payable, or if each and every the stipulations, agreements, conditions and covenants of said promissory note and this deed, or either, are not fully performed, complied with and abided by, the said aggregate sum mentioned in said promissory note shall become due and payable forthwith or thereafter at the option of the Mortgagees, their heirs, legal representatives or assigns, as fully and completely as if the said aggregate sum of seventy-seven thousand, nine hundred eighty-one and 45/100 dollars were originally stipulated to be paid on such day, anything in said promissory note or herein to the contrary notwithstanding."
The complaint alleged that the property involved was owned by the mortgagor; that the mortgagor had failed to pay the installment of principal which became due on June 29, 1969, and the annual interest payment which fell due on said date; and announced the election of the mortgagees to declare the full amount owed on the said note and mortgage to be due and payable,[1] for which, together with attorney fees and costs, they prayed for foreclosure.
The complaint contained no allegations upon which to predicate or explain the joining of Thomas Werner individually, and his wife, as defendants. There was no allegation that either of them, as individuals, held or claimed any interest in the property involved.
After service of process on Thomas Werner individually and his wife, but prior to service of process on the alleged mortgagor-owner, Thomas Werner, as trustee, the plaintiffs made application for appointment of a receiver, supported by their affidavit stating the value of the property to be $100,000, and stating without any supporting facts, that waste had been and would continue to be committed on the property. In opposition to the application for receiver, the mortgagor-owner Thomas Werner, as trustee, filed an affidavit stating he had acquired title to the property by purchase from the plaintiffs on June 28, 1968, and had been in possession of the property since November 1, 1967, pursuant to the contract upon which he had made the purchase; that "said property is a lime grove of approximately 3,075 trees, and contains a private airplane hangar and landing strip;" that since taking possession he had expended $54,000 on the property in cultivation of the grove, replacement of trees, and for fertilizers and sprays and in harvesting crops; and stating that *255 unless he was permitted to retain possession and manage the grove its condition would deteriorate. On consideration thereof the trial court denied the application for receiver, and no question with relation to that ruling is presented on this appeal.
A motion to dismiss was filed on behalf of the three defendants. Therein the mortgagor-owner challenged jurisdiction on the ground that he had not been served with process, and the individual defendants Thomas Werner and Wilma Werner sought to be dismissed from the cause due to the absence of any allegations showing them to be either necessary or proper parties.
On consideration of the motion to dismiss, the trial court entered the order from which the plaintiffs have taken this appeal. Upon reciting that the defendant mortgagor Thomas Werner, as trustee, was ready, willing and able to pay to plaintiffs the defaulted installment of principal and interest the trial court ordered the said Thomas Werner, as trustee, to pay to plaintiffs the defaulted installment of principal in the amount of $15,596.29 and the defaulted interest in the amount of $4,678.89 with attorney fees in the amount of $750 and the court costs of $35. The plaintiffs were then ordered to serve the trustee with process. The lis pendens which was filed by the plaintiffs incident to the cause was ordered to be cancelled of record. The court retained jurisdiction to enforce payment of each future installment as it should become due.
The effect of the order was to deny to the plaintiffs their right to accelerate the mortgage indebtedness as contracted for in the note and mortgage and their remedy to enforce the contract by foreclosure, and to place the mortgage in good standing upon payment by the mortgagor of the defaulted installment of principal and interest.
The first annual installment of principal and the interest fell due on June 29, 1969. The 15-day grace period ended on July 14. The complaint for foreclosure, which embodied the mortgagees' election to accelerate, was filed 10 days later on July 24, 1969.
An acceleration clause or promise in a note calling for payment in installments, and/or in a mortgage given as security therefor, confers a contract right upon the mortgagee which he may elect to enforce, upon a default. In the case of Treb Trading Co. v. Green, 102 Fla. 238, 135 So. 510, 136 So. 688, after holding that foreclosure can be had for an entire mortgage indebtedness upon election to accelerate for a default consisting of nonpayment of taxes, required to be paid by a mortgage which contains a clause authorizing acceleration for default therein, the Supreme Court said:
"* * * Such an agreement is not prohibited by statute, nor is it against public policy; it is not in the nature of a forfeiture nor a hard contract which it would be unconscionable to enforce, because an investor may very properly insist that his security shall be kept intact or that the loan shall mature. In fact, such a provision is very analogous to an agreement that a failure to pay the interest promptly shall render the whole principal due. Such stipulations have almost invariably been [up]held by the courts. If the mortgagor claims that nonpayment of taxes was due to wrongful acts or representations of the mortgagee, the burden of proof is upon the mortgagor. See Wiltsie on Mortgage Foreclosures (4th Ed.) vol. 1, pages 93-95; Jones on Mortgages (8th Ed.) vol. 2, pages 982-984."
In United States ex rel. Vermont Inv. Co. v. City of Cocoa, S.D.Fla. 1936, 17 F. Supp. 59, 60, in rejecting an application to the court by a defendant municipal corporation for an order which would have delayed and hindered a bondholder who had sued to enforce payment of defaulted municipal bonds during a period of depression, which the court stated "would amount to the court setting its seal of approval *256 upon repudiation," the court announced it was aware that the constitutional prohibition against impairment of the obligation of contracts (Art. I, § 10, United States Constitution) is only effective against legislative bodies, and said, "but I am of the opinion that the spirit of such constitutional prohibition should govern the courts as well as legislative bodies." The court then added: "I can conceive of nothing that would tend more to bring the State of Florida into disrepute than to have the impression go out into the financial and commercial world that the courts of Florida failed to respect and enforce the obligation of contracts."
As recognized in the leading case of Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751, and succinctly stated in Althouse v. Kenney, Fla.App. 1966, 182 So.2d 270, 272, "A court of equity may refuse to foreclose a mortgage when an acceleration of the due date of the debt would be an inequitable or unjust result and the circumstances would render the acceleration unconscionable."
However, because of the essentiality of safeguarding the validity of contracts, and the right of enforcement thereof in event of a breach (Declaration of Rights, § 4, Fla. Const., F.S.A.), a contract for acceleration of a mortgage indebtedness should not be abrogated or impaired, or the remedy applicable thereto denied, except upon defensive pleading and proof of facts or circumstances which are regarded in law as sufficient grounds to prompt or support such action by the court.[2] The decisions disclose that foreclosure on an accelerated basis may be denied where the right to accelerate has been waived or the mortgagee estopped to assert it, because of conduct of the mortgagee from which the mortgagor (or owner holding subject to a mortgage) reasonably could assume that the mortgagee, for or upon a certain default, would not elect to declare the full mortgage indebtedness to be due and payable or foreclose therefor;[3] or where the mortgagee failed to perform some duty upon which the exercise of his right to accelerate was conditioned;[4] or where the mortgagor tenders payment of defaulted items, after the default but before notice of the mortgagee's election to accelerate has been given (by actual notice or by filing suit to foreclose for the full amount of the mortgage indebtedness);[5] or where there was intent to make timely payment, and it was attempted, or steps taken to accomplish it, but nevertheless the payment was not made *257 due to a misunderstanding or excusable neglect, coupled with some conduct of the mortgagee which in a measure contributed to the failure to pay when due or within the grace period.[6]
Examination of the decisions cited in the margin with reference to the matters set out in the preceding paragraph reveals that a willingness of a mortgagor to cure a default, after notice that the mortgagee has exercised his election to declare the entire mortgage indebtedness due for such default, is not a circumstance which is recognized in law or equity as a ground for denying acceleration and foreclosure. Equally ineffective as a ground for denying acceleration was the only other matter in the record which may have motivated the challenged order. That was the statement of the mortgagor, in his affidavit filed in opposition to a motion for a receiver, that certain substantial sums had been expended for improvement of the mortgaged property, prior to the default in payment of the first annual installment of principal and the interest which became due at the same time. The expenditures of the mortgagor on the property were made prior to any default, in the face of the requirement in the note and mortgage for annual payments, and with an awareness on the part of the mortgagor of the right of the mortgagees, as conferred by the acceleration clauses in the note and mortgage, to accelerate for a default; and the action taken by the mortgagees upon the default in payment of the substantial installment of principal and interest was only that which the mortgagor had contracted could be done in such event.
It would be difficult to estimate the extent of the adverse effect on land sales involving deferred payments and on mortgage financing in this state that would result if courts were to hold that acceleration clauses contained in promissory notes and mortgages will not be enforceable where a mortgagor, after notice of the mortgagee's election to accelerate for such default, offers to make the defaulted payment, or because a mortgage debtor had made improvements on the mortgaged property prior to the default.
Accordingly, the order appealed from is reversed, and the cause is remanded to the circuit court for further proceedings not inconsistent herewith, following service of process on the necessary party defendant, the mortgagor-owner Thomas Werner, as trustee; and with direction to enter an order restoring to effectiveness the recorded lis pendens notice.
Reversed and remanded with directions.
NOTES
[1] The filing of suit for foreclosure amounts to exercise of the option of the mortgagee to declare the whole of the principal sum and interest secured by the mortgage due and payable. Prince v. Mahin, (1917) 73 Fla. 525, 74 So. 696; Gus' Baths v. Lightbown, (1931), 101 Fla. 1205, 1211, 133 So. 85, 135 So. 300; Liles v. Savage, (1935) 121 Fla. 83, 163 So. 399. And the filing of suit to foreclose operates as notice to the mortgagor of the election to accelerate, where the election to do so is declared in the complaint (as was done in this case) or, in the absence of such declaration, where the complaint on its face shows that foreclosure for the entire mortgage indebtedness is sought therein. Liles v. Savage, supra.
[2] "In the early history of equity jurisprudence when the chancellor was the mouthpiece of the crown and his prerogatives and duties were loosely understood and his decrees could not be resisted, he sometimes acted on the dictates of conscience and what appeared to be natural justice, but today the rules and maxims governing courts of equity are as definite and certain as those governing other tribunals and by them the chancellor is bound rather than by what he conceives to be right and just in a particular case. 10 R.C.L. 262." Home Owners Loan Corporation v. Wilkes, (1938) 130 Fla. 492, 178 So. 161, 163.

In that case it was held that a showing by the mortgagor of economic misfortune, his unemployment and inability to work would not justify denial of the mortgagee's right to enforce the mortgage contract. Also, in Morris v. Waite, (1935) 119 Fla. 3, 160 So. 516, the court rejected a contention of a mortgagor that it would be unconscionable to enforce a mortgage contract for a showing of personal misfortune of the mortgagor, induced by and coupled with an economic depression.
[3] Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751; Jaudon v. Equitable Life Assur. Soc. of United States, 102 Fla. 782, 136 So. 517; Harrell v. Lombard, Fla.App. 1960, 122 So.2d 625; Koschorek v. Fisher, Fla.App. 1962, 145 So.2d 755; Overholser v. Theroux, Fla.App. 1963, 149 So.2d 582.
[4] Kreiss Potassium Phosphate Co. v. Knight, supra; Mayo v. New, Fla. 1949, 40 So.2d 365.
[5] River Holding Co. v. Nickel, Fla. 1952, 62 So.2d 702.
[6] Overholser v. Theroux, supra; Lieberbaum v. Surfcomber Hotel Corp., Fla.App. 1960, 122 So.2d 28.